BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
BRYCE B. ELLSWORTH, IDAHO STATE BAR NO. 8254
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
6450 N. MINERAL DRIVE SUITE 210
COEUR D'ALENE, ID 83815
TELEPHONE: (208) 667-6568
FACSIMILE:  (208) 667-0814

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>Roberto Carlos Morales,<br><br>Defendant. | Case No. 1:17-cr-00274-BLW<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT MOTION FOR COMPASSIONATE RELEASE** |

The United States of America, by and through Bart M. Davis, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, pursuant to 18 U.S.C. § 3582(c)(1)(A), objects to the Defendant's Motion for Compassionate Release.  This Court should deny the motion without prejudice for Defendant's failure to exhaust administrative remedies.  Should the Court reach the merits, it should deny the motion with prejudice because Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute.

**Factual Background**

On May 8, 2018, the Defendant was convicted of distribution of methamphetamine. This Court sentenced him to 140 months of imprisonment. Defendant has served 36 months of that sentence. He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic.

I. **BOP's Response to the COVID-19 Pandemic**

As this Court is well aware, Covid-19 is an extremely dangerous illness. It has caused many deaths in the United States and in the world in a short time. It has resulted in massive disruption to our society and economy. Unfortunately and inevitably, some inmates have become ill. In response to the pandemic, the Federal Bureau of Prisons (BOP) has taken significant measures to protect the health of the inmates in its charge while still carrying out its charge to incarcerate sentenced criminals to protect the public.

BOP has the statutory authority to transfer prisoners to home confinement. 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. Indeed, since the pandemic began BOP has been assessing all inmates to determine their suitability for home confinement. The Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law No. 116-236 (enacted March 27, 2020), authorized the Attorney General to expand the cohort of inmates who could be considered for home confinement upon his finding of emergency conditions which are materially affecting the function of the BOP. On April 3, 2020, the Attorney General made that finding, and in a Memorandum for the Director of the Bureau of Prisons (April 3, 2020 Memorandum), authorized the Director to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where the Director determines that COVID-19 is materially affecting operations. The April 3, 2020 Memorandum directed BOP to include a

broader pool of inmates and to use home confinement even if electronic monitoring is not available, so long as it was consistent with protection of public safety. Since the Memo the BOP has placed 7,042 inmates on home confinement.

Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. As of July 22, 2020, BOP had 128,949 inmates in BOP-managed institutions and others in community-based facilities. *See* https://www.bop.gov/coronavirus/. There were approximately 4,247 federal inmates and 385 BOP staff who had confirmed positive test results for COVI-19 nationwide. *Id*. Currently 5,658 inmates and 644 staff have recovered from the virus. *Id*. There have been 98 federal inmate deaths and 1 BOP staff member death attributed to Covid-19. *Id*. BOP had placed nearly twice that number on home confinement. BOP is prioritizing those inmates who are at higher risk for severe illness because of their age and underlying serious medical conditions as determined by the Centers for Disease Control and Prevention ("CDC"). *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Transfer to home confinement is just one of the significant measures that BOP has taken to protect the health of the inmates in its charge. Further details and updates of BOP's modified operations are available to the public on its website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp. As the Defendant's facility has no COVID-19 infections, he is arguable less likely to catch the disease while incarcerated than released into the general public where the disease is more prevalent. Currently there have been 9234 COVID-19 cases in Ada and Canyon County, where the Defendant lived and frequented prior to his incarceration,

with the majority of those cases occurring the last several weeks. *See*

https://coronavirus.idaho.gov/

**II.    Defendant's Conviction and Request for a Sentence Reduction**

In February and March of 2017, the Defendant and his co-defendant were involved in distributing methamphetamine. PSR ¶ 10-14. Officers did four controlled buys from them during this period, purchasing ounce quantities of meth. *Id*. Though the majority of the buys were done with the co-defendant, the Defendant was actively involved in the last buy. *Id*. During this same time, the Defendant was on federal supervised release and ultimately an a warrant for his arrest was issued based on supervised release violation. *Id*. ¶ 15. Based on the warrant, officers arrested the Defendant on July 25, 2017, while he was in a vehicle. *Id*. In the vehicle officer located 51 grams of methamphetamine, drug paraphernalia, and a pistol holster. *Id*. The Defendant was charge in the district of Idaho with distribution of methamphetamine and ultimately plead guilty to that offense. *Id*. ¶ 6. The Defendant was sentenced on May 8, 2018. The Defendant's prior criminal history showed that at the time of this offense, he was on supervised release for two other drug trafficking offence. *Id*. ¶ 46. The Defendant had previous convictions for conspiracy to possess with intent to distribute marijuana and conspiracy to possess with intent to distribute marijuana and cocaine, out of Texas and Virginia. *Id*.

The Defendant has now completed 36 months of his 140 month sentence, or approximately 25%. During that time period the defendant has had at least one disciplinary issues. See Attachment 1. This issue involved the defendant being in possession of drugs and or alcohol.

On July 10, 2020, an emergency motion for compassionate release was filed by the Defendant. *See* ECF 65. In that motion the Defendant request that this court immediate release the Defendant due to the ongoing COVID-19 Pandemic and the risk of death it presents to the Defendant. *Id*. As of July 21, 2020, according to a BOP attorney, the Defendant has not submitted a request with BOP for compassionate release. On June 25, 2020, it appears that the

Defendant did make a request to staff asking if he "qualif(ies) for the first-step act", and received a response from a staff member of his facility that same day stating that he is "federal time credit eligible" ECF 65-3 pg. 3. The staff member went on to explain that this means the Defendant could earn time to be applied to their halfway house referral. *Id*. This does not appear to be a request for compassionate release and the BOP does not consider him for compassionate release based on this staff request.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a

danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[1]

**Arguments**

This Court should deny Defendant's motion for a reduction in his sentence without prejudice because he has failed to exhaust administrative remedies. Should the Court reach the merits of his motion, the Court should deny it with prejudice on independently sufficient grounds. The Defendant has not met his burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

**I.  This Court Should Deny the Motion Without Prejudice Because Defendant Has Not Exhausted Administrative Remedies.**

This Court lacks authority to act on Defendant's motion for a sentence reduction at this time. As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court. That restriction is mandatory, and it continues to serve an important function during the present crisis. The government is very mindful of the concerns created by COVID-19, and BOP is making its best effort both to protect the inmate population and to address the unique circumstances of individual inmates.

Section 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

RESPONSE TO DEFENDANT MOTION FOR COMPASSIONATE RELEASE - 6

the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." § 3582(c)(1)(A).

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And this is for good reason: BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

That is especially true during the current crisis. As explained above, BOP must balance a host of considerations in deciding whether to release an inmate to recommend a reduction in an inmate's sentence or grant the inmate home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit has held, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597. *See also United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important.").

Accordingly, Defendant's motion should be denied without prejudice to refiling once he has exhausted administrative remedies.

RESPONSE TO DEFENDANT MOTION FOR COMPASSIONATE RELEASE - 7

**II.     Should The Court Reach the Merits, It Should Deny The Motion Because Though the Defendant does Present "Extraordinary and Compelling Reasons" He Poses a Danger to Public Safety.**

Even if this Court had authority to grant Defendant's motion for a reduction of his sentence, it should be denied.  Though the Defendant does meet the "extraordinary and compelling reasons" meaning of § 3582(c)(1)(A) the Defendant poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

**A.     Extraordinary and Compelling Reasons.**

The Defendant does have several medical conditions, including Diabetes and Hypertension.  The U.S. Centers for Disease Control (CDC) has advised that people with Diabetes and Hypertension might be at risk for severe illness from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

In May 2020, the Department of Justice refined its position on compassionate release as follows:  "under present circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an 'extraordinary and compelling reason' that may warrant compassionate release if other criteria are also met.  18 U.S.C. 3582(c)(1)(A); *see, e.g.*, *United States v. Pabon*, No. 17-CR-165, 2020 WL 2112265, at *3 (E.D. Pa. May 4, 2020) (noting and agreeing with Government's position); *see also* Sentencing Guidelines § 1B1.13(2) (court must also determine that the inmate 'is not a danger to the safety of any other person or to the community'); 18 U.S.C. 3582(c)(1)(A) (court must consider the 18 U.S.C. 3553(a) factors, as 'applicable,' as part of its analysis); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020)."   *Williams v.*

*Wilson,* No. 19-A1047, Reply in Support of Application for a Stay, at 18, n.4 (Sup. Ct.) (filed June 4, 2020).

Based on this and a review of the facts surrounding the defendant's case, the government agrees that, during the COVID-19 pandemic, the defendant's chronic medical condition, specifically Diabetes and Hypertension, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the defendant's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by these chronic medical conditions and sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c).

However, the Government does oppose compassionate release based on the 3553(a) factors and because the defendant is still a danger to the safety of any other person or to the community.

Thought the Defendant is at risk of suffering severe symptoms, the Court should deny his motion because he remains a danger to society. The Court recognized the serious nature of Defendant's offense, as well as his criminal history, in sentencing him. The § 3553(a) factors do not support his early release. He presents the same danger to the community as he did just 36 months ago, when the Court sentenced him. The Court should deny his motion because he has not, and cannot, satisfy the high burden for the unusual and extreme remedy he seeks.

**B.     Defendant remains a danger to the community if released and the 18 U.S.C. § 3553(a) factors weigh heavily against his release.**

In order to grant early release from prison, the Court must be satisfied that the Defendant is not a danger to society and that the § 3553(a) factors support his early release. The Defendant

RESPONSE TO DEFENDANT MOTION FOR COMPASSIONATE RELEASE - 9

remains just as much a danger to society now as when the Court sentenced him. The Defendant is a drug trafficker with a prior history that is concerning. The nature and circumstances of his crime, combined with his history and characteristics, do not support his early release.

    a.    <u>The nature and circumstances of the offense</u>.

One of the reasons the Court sentenced the Defendant to a 140 month was due to the timing of the Defendant's conduct. In this case, the Defendant distributed methamphetamine to a confidential informant. At the time the Defendant distributed the methamphetamine he was on supervised release on two separate cases The other case were both federal drug trafficking offense. PSR ¶ 43-44. When the Defendant was ultimately arrested, he had another two ounces of methamphetamine with him. The Defendant's criminal conduct shows that he is a continued danger to society and does not warrant early release.

    b.    <u>The Defendant's history and characteristics</u>.

The Defendant's criminal history, is concerning. The Defendant in 2007 was convicted of conspiracy to possess with intent to distribute marijuana in the Western District of Texas. *Id*. The Defendant, also in 2007, was convicted of conspiracy to distribute and possession with intent to distribute marijuana and cocaine, in the Eastern District of Virginia. *Id*. The defendant was held accountable for 4,141.46 pounds of marijuana, and 11.64 pounds of cocaine. *Id*. In that case the defendant was trafficking marijuana and cocaine between Texas, Virginia, Florida, North Carolina, Alabama, Indiana, and Nebraska. In 2017, the Defendant violated his supervised release in both these cases by committing a new crime of theft, failed to report to his probation officer, and failed to complete a mental health assessment. *Id.* Despite a second opportunity at supervision in both of these cases, the Defendant chose to continue to distribute drugs. The

Defendant's history and characteristics reveal an individual who has been unable to conform his actions to the law, and remains a danger to the community.

      c.      <u>The danger to society posed by the defendant's release</u>.

The Defendant has repeatedly chosen profits and drugs over the safety of himself and others. He has not complied with the law, or court orders, despite multiple prior convictions and a lengthy period of incarceration. At the time the Defendant was arrested, he had a gun holster and methamphetamine in his possession. Based on his inability to comply with the law and his continued drug trafficking, the Defendant is a danger to himself and his community.

The Government submits that the Court should consider the nature and circumstances of Defendant's offense, as well as his history and characteristics, in deciding his motion. These factors all weigh heavily against reducing his sentence. Such a reduction would be contrary to the § 3553(a) sentencing factors, would diminish the seriousness of the offense, represent inadequate punishment, promote no respect for the law, and effect no deterrence.

## CONCLUSION

The Court should deny the Defendant's motion for compassionate release because he has not exhausted his administrative remedies, remains a danger to the community, and the 3553(a) factors do not support such a reduction.

Respectfully submitted this 22nd, day of July, 2020.

                              BART M. DAVIS
                              UNITED STATES ATTORNEY
                              By:

                              <u>*s/Bryce B. Ellsworth*</u>
                              BRYCE B. ELLSWORTH
                              Assistant United States Attorney